IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :
                               :
                               :
    vs.                        :   CRIMINAL NO. 1:CR-06-0268
                               :
DELMAR HARRIS,                 :     (Judge Caldwell)
            Defendant          :
                               :
                               :

*M E M O R A N D U M*

I.   *Introduction*

Defendant, Delmar Harris, has filed a motion under 28 U.S.C. § 2255

seeking to vacate the 180-month (15-year) sentence imposed on him under the Armed

Career Criminal Act (ACCA), 18 U.S.C. § 924(e).  The ACCA requires a mandatory

minimum sentence of fifteen years for a defendant who has been convicted under 18

U.S.C. § 922(g) and who has three prior convictions for either a "violent felony" or a

"serious drug offense."

Defendant argues that his sentence is no longer valid in light of *Johnson v.*

*United States*, ____ U.S. ____, 135 S.Ct. 2552, 192 L.Ed.2d 569 (2015)("*Johnson*

(2015)").[1]  In *Johnson* (2015), the Supreme Court struck down as unconstitutionally

vague the residual clause in 18 U.S.C. § 924(e)(2)(B).  *Id.* at ____, 135 S.Ct. at 2557.

Subsection (e)(2)(B) defines a "violent felony" for the purpose of determining whether a

---

[1]  The motion is a counseled one.  In accordance with this court's Standing Order 15-6, the Federal Public Defender's Office was appointed to represent Defendant on his *Johnson* (2015) claim.

defendant qualifies for the fifteen-year sentence mandated by the ACCA.[2]  Defendant

argues that without the residual clause his prior convictions no longer qualify him as an

armed career criminal under the elements clause or the enumerated-offenses clause.

The government opposes the motion, asserting that Defendant could have

made the *Johnson* (2015) argument on direct appeal and hence he has procedurally

defaulted it.  The government also contends that Defendant's arguments against use of

the elements clause and enumerated-offenses clause to qualify his prior convictions as

predicate offenses are time-barred since they are not based on *Johnson* (2015) but on

case law that was available before *Johnson* (2015) was decided.

II.   *Background*

On August 2, 2006, Defendant was named in a two-count indictment.

Count I charged that on February 2, 2006, Defendant, "having been convicted of a crime

punishable by imprisonment for a term exceeding one year, did knowingly possess a

---

[2]  In pertinent part, subsection 924(e)(2)(B) defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Subsection (i) is the "elements" clause, also called the "force" clause.  That part of subsection (ii) listing burglary, arson, extortion, and crimes involving the use of explosives is called the enumerated-offenses clause.  The remaining part of subsection (ii) is the residual clause, a violent felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

firearm," in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Count II charged him with the same offense, but occurring on April 29, 2006.

On December 8, 2006, Defendant executed a written plea agreement, agreeing to plead guilty to Count I, and on September 21, 2006, Defendant pled guilty to that Count.

A presentence report (PSR) was prepared.  The PSR did not specify which of Defendant's prior convictions qualified as predicate offenses under the ACCA.  As Defendant sets forth at page 2 of his motion, and as the government agrees, the following prior convictions could have qualified: (1) burglary, criminal conspiracy, aggravated assault and robbery (PSR ¶ 21); (2) robbery and criminal conspiracy (PSR ¶ 23); (3) unlawful delivery of a controlled substance (cocaine) (PSR ¶ 25); and (4) aggravated assault, resisting arrest and escape (PSR ¶ 26).[3]

A guidelines range of 135 to 169 months was calculated, taking into account in part that Defendant qualified under the ACCA as an armed career criminal. (PSR ¶¶ 16 and 45).  However, since the mandatory minimum sentence under the ACCA was fifteen years, the guidelines range became 180 months.  (PSR ¶¶ 44 and 45).  On December 18, 2006, Defendant was sentenced to 180 months' imprisonment.  He took

---

[3] Defendant makes no argument on the criminal conspiracy conviction, so we do not address that conviction in this memorandum.

no direct appeal.  Some nine and one-half years later, in *Johnson* (2015)'s wake,

Defendant filed the instant 2255 motion.[4]

Defendant argues that without an enhancement under the ACCA, a proper

calculation of his guidelines range would be 84 to 105 months, with a statutory maximum

sentence of ten years.  (Doc. 34, 2255 motion at p. 3).  Defendant asserts he has been in

custody since August 8, 2006, and has already served almost ten years, not counting

good-conduct time.  (*Id.*).

III.   *Discussion*

A.  *Harris Has Not Procedurally Defaulted His Claims*

Defendant could have raised a vagueness challenge to the residual clause

on direct appeal and, in doing so, could have presented the same arguments he makes

here as to why the prior convictions are not violent felonies under the elements or

enumerated-offenses clauses.  A claim that has been procedurally defaulted by failing to

raise it on direct review cannot be presented in a 2255 motion.  *See Bousley v. United*

*States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).  The

government therefore argues that we cannot consider Defendant's motion.[5]

---

[4]  *Johnson* (2015) was made retroactively applicable to cases on collateral review by *Welch v. United States*, ____ U.S. ____, ____, 136 S.Ct. 1257, 1265, 194 L.Ed.2d 387 (2016). Defendant's 2255 motion, his first, is timely as *Johnson* was decided June 26, 2015, and the motion was filed on May 27, 2016.  *See* 28 U.S.C. § 2255(f)(3).

[5]  Making a rule retroactively applicable to cases on collateral review does not eliminate the requirement of showing that a claim has not been procedurally defaulted.  *See Flamer v. Delaware*, 68 F.3d 736, 756 n.25 (3d Cir. 1995).

There are exceptions to procedural default.  A defendant may raise a procedurally defaulted claim if he shows cause for the default and prejudice to him from the default.  *Id.*, 118 S.Ct. at 1611.  *See also Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009).[6]

Defendant argues he did not procedurally default his claim because any challenge made at the time of sentencing would have been futile as it was clear at that time (December 2006) that his prior convictions for burglary, robbery, aggravated assault, resisting arrest and escape would have qualified, at the least, as violent felonies under the residual clause.  He cites *United States v. Blair*, 734 F.3d 218, 223 (3d Cir. 2013), and *United States v. Gibbs*, 656 F.3d 180, 188-89 (3d Cir. 2011), for the proposition that the courts did not consider the residual clause unconstitutionally vague at the time he was sentenced.  (Doc. 41, 2255 motion, p. 10).  Defendant also argues, essentially for the same reason, that if he did default, he has cause to excuse it "because a unanimous body of Supreme Court and Circuit precedent foreclosed Mr. Harris' challenge to his armed career criminal classification under the residual clause."  (*Id.*, p. 11).

We fail to see how these arguments either establish that there is no procedural default or that Defendant has shown cause for his procedural default.  The procedural default here is of the claim that the residual clause is unconstitutionally vague. That there was no meritorious argument based on the residual clause's language that the

_____

[6]  A defendant can also show actual innocence of the crime, *Bousley*, 523 U.S. at 622, 118 S.Ct. at 1611, but that exception to procedural default does not apply here.

residual clause would not have covered the prior convictions would not have foreclosed the separate constitutional claim that the residual clause is unconstitutionally vague. In this regard, we note that *Gibbs* and *Blair*, the two cases that supposedly touch on the constitutional claim, were decided in 2011 and 2013, respectively, several years after Defendant's sentencing in December 2006, and therefore could not have led Defendant to believe a vagueness claim would not have succeeded on appeal. Defendant has therefore defaulted his claim.

Nonetheless, we believe Defendant has cause for his procedural default. Cause can be established "where a constitutional claim is so novel that its legal basis is not reasonably available . . . ." *Bousley*, 523 U.S. at 622, 118 S.Ct. at 1611 (quoting *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984)). This can occur "in a variety of contexts . . . ." *Reed*, 468 U.S. at 17, 104 S.Ct. at 2911. We believe the vagueness claim was not reasonably available to Defendant on the following grounds. First, at the time Defendant was sentenced, the claim does not appear to have been raised in many federal cases. *Compare Bousley*, 523 U.S. at 622-23, 118 S.Ct. at 1611 (the petitioner could not show cause for failing to raise his claim earlier when at the time of his guilty plea "the Federal Reporters were replete with cases" dealing with the same claim); *Parkin v. United States*, 565 F. App'x 149, 151-52 (3d Cir. 2014) (nonprecedential)(cause not shown when there were a "plethora of cases raising that very claim" at the time of the defendant's direct appeal). Second, at the time of sentencing, there were only three decisions from the courts of appeals discussing

-6-

whether subsection 924(e)(2)(B) was unconstitutionally vague.  All three had ruled,
summarily, that it was not.  The first two cases did not involve the application of the
residual clause.  *See United States v. Sorenson*, 914 F.2d 173, 175 (9th Cir.
1990)(dealing with burglary in the enumerated-offenses clause); *United States v. Presley*,
52 F.3d 64, 68 (4th Cir. 1995)(citing *Sorenson*)(dealing with the elements clause).
However, the third case, *United States v. Childs*, 403 F.3d 970, 972 (8th Cir. 2005)(citing
both *Sorenson* and *Presley*), rejected the vagueness claim in the context of applying the
residual clause to a conviction for possessing a short-barreled shotgun.  Third, if
Defendant were to have made a vagueness challenge to the residual clause, he would
have had to have done so knowing the language at issue, conduct presenting "a serious
potential risk," is similar to language embedded in many federal and state criminal
statutes.  This similarity led the Supreme Court to reject a suggestion of vagueness in
*James v. United States*, 550 U.S. 192, 210 n.6, 127 S.Ct.1586, 1598 n.6, 167 L.Ed.2d
532 (2007).[7]  In these circumstances, Defendant has shown cause for not raising the
residual-clause vagueness claim in his direct appeal as it was not reasonably available at
that time.

　　　　　Parenthetically, other courts have found cause to excuse the default of a
*Johnson* (2015) claim, although factual circumstances sometime differed from the instant
case.  In *Casper v. United States*, No. 08-CR-127, 2016 WL 3583814, at *4 (W.D.N.C.

---

　　　　[7] However, the same point did not save the residual clause when it was made in
*Johnson*( 2015).  ____ U.S. at ____, 135 S.Ct. at 2561.

July 1, 2016), and *Cummings v. United States*, No. 15-CV-1219, 2016 WL 799267, at \*7 (E.D. Wis. Feb. 29, 2016), cause was found on the basis that sentencing in those cases occurred after *James, supra,* rejected the vagueness challenge to the residual clause but before *Johnson* (2015) overruled *James*. *See also United States v. Gomez*, No. 04-CR-2126, 2016 WL 1254014, at \*4 (E.D. Wash. Mar. 10, 2016)(procedural default did not apply when the governing law, *Johnson* (2015), did not exist until about nine years after the defendant's sentencing); *United States v. Dean*, ____ F. Supp. 3d ____, ____, 13-CR-137, 2016 WL 1060229, at \*6 (D. Or. Mar. 15, 2016).

As noted, to excuse procedural default Defendant must show prejudice as well.  Defendant has done so because he has shown that his sentencing guidelines range would be significantly less if his prior convictions are not treated as violent felonies. The original calculation therefore acted to his actual and substantial disadvantage.  *See United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000).

Since Defendant has excused his procedural default, we will address the merits of his 2255 motion.

B. *Determining Whether a Prior Conviction is a Violent Felony*

As noted, the ACCA, 18 U.S.C. § 924(e)(1), requires a mandatory minimum sentence of fifteen years for a defendant who has been convicted under 18 U.S.C. § 922(g) and who has three prior convictions for a "violent felony" or a "serious drug offense."  Defendant does not dispute that his June 1995 conviction for unlawful delivery of cocaine (PSR ¶ 25) is a serious drug offense.  We therefore need only determine if any

two of Defendant's other convictions qualify as a violent felony.  As also noted above, and with the striking down of the residual clause, under the elements clause, a violent felony, in pertinent part, is a crime that "has an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  Alternatively, under the enumerated-offenses clause, it is burglary, arson, extortion, or crimes involving explosives, *id.* § 924(e)(2)(B)(ii), but in their "generic" forms. *Mathis v. United States*, ____ U.S. ___, ____, 136 S.Ct. 2243, 2251, 195 L.Ed.2d 604 (2016).

A determination that a conviction is a violent felony is made under the "categorical approach."  *United States v. Abbott*, 748 F.3d 154, 157 (3d Cir. 2014). Under that approach, the court "may look only to the elements of a defendant's prior conviction, not 'to the particular facts underlying those convictions.'"  *Id.* (quoting *Descamps v. United States*, ____ U.S. ___, ____, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013)).  The elements of the crime of conviction must necessarily match the elements of a "violent felony" as defined in the ACCA.  *Abbott*, 748 F.3d at 157.  If the elements of the crime of conviction "cover a greater swath of conduct than the elements of the relevant ACCA offense," if the elements are broader than the ACCA offense, then the conviction does not qualify as a predicate offense under the ACCA.  *Mathis, supra,* 136 S.Ct. at 2251.  Even if a defendant's "conduct fits within" the ACCA offense, "the mismatch of elements" disqualifies the conviction as a predicate offense.  *Id.*

The modified categorical approach sometimes applies.  Under that approach, the court can look beyond the elements of the prior conviction when the statutory crime is a divisible one, listing multiple alternative elements, *Abbott*, 748 F.3d at 157, so that the statute effectively creates several different crimes.  *Descamps*, 133 S.Ct. at 2285 (quoted case and internal quotation marks omitted).  The modified categorical approach assists in identifying, "among several alternatives, the crime of conviction so that the court can compare it to the" ACCA offense.  *Id.*  Thus, when a divisible statute is involved, the court may look at *Shepard* documents, documents "beyond the face of the statute [consisting of] the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented' to determine which of the alternative elements was involved in the defendant's conviction."  *Abbott*, 748 F.3d at 158 (quoting *Shepard v. United States,* 544 U.S. 13, 16, 125 S.Ct. 1254, 1257, 161 L.Ed.2d 205 (2005)).  Like the categorical approach, the modified categorical approach focuses on identifying the crime of conviction, not on discovering facts that could satisfy the elements of the ACCA offense.  *Descamps*, 133 S.Ct. at 2288, 2293.

C.  *The Escape Conviction*

In June 1995, Defendant pled guilty to escape.  At the time, the offense of escape was defined in 18 Pa. Cons. Stat. Ann. § 5121 as follows:

> (a) Escape.--A person commits an offense if he unlawfully removes himself from official detention or fails to return to

> official detention following temporary leave granted for a
> specific purpose or limited period.

*Id.* § 5121(a).  Section 5121 contains a grading provision.  Under subsection (d), escape

is a felony of the third degree, in pertinent part, where:

> (i) the actor was under arrest for or detained on a charge of
> felony or following conviction of crime;
>
> (ii) the actor employs force, threat, deadly weapon or other
> dangerous instrumentality to effect the escape; or
>
> . . . .

*Id.* § 5121(d).  Otherwise, the offense is a misdemeanor of the second degree.  *Id.* §

5121(d)(2).

At the time of Defendant's conviction in this case, escape would have

qualified as a violent felony under the ACCA, but under the residual clause.  *See United

States v. Luster*, 305 F.3d 199, 202 (3d Cir. 2002)(concluding that escape is a "crime of

violence" under a sentencing-guidelines residual clause similar to the ACCA's violent-

felony provision).[8]  Defendant argues that escape does not otherwise qualify as a violent

felony.  It does not qualify under the enumerated-offenses clause because it is not one of

the offenses listed in that clause.  Defendant further argues it does not qualify under the

elements clause because, while the Third Circuit has treated the statute as divisible, no

---

[8]  A defendant's sentence can be enhanced under the guidelines for a "crime of violence" that is substantively similar to a "violent felony" under the ACCA.  *See* U.S.S.G. § 4B1.2(a).  The Third Circuit relies on cases dealing with both clauses interchangeably, *see United States v. Calabretta*, ____ F.3d ____, ____, 2016 WL 3997215, at *4 (3d Cir. 2016), as well as similar clauses involving immigration law.  *See United States v. Mahone*, 662 F.3d 651, 653 n.3 (3d Cir. 2011).

version of the offense based on any statutory subsection has as an element the use, attempted use, or threatened use of physical force against the person of another.

In opposition, since the statute is divisible, the government argues that at least one version of the offense, based on subsection 5121(d)(1)(ii), is a violent felony if a defendant has employed force.  As further support, the government relies on the PSR's factual summary set forth at paragraph 26, which the government characterizes as describing the escape offense "as arising from a physical struggle with officers during an arrest."  (Doc. 40, Br. in Opp'n at p. 26).  The government concludes that since it is possible for escape to be a violent felony, Defendant has failed to meet his burden in these section 2255 proceedings to show that his conviction for escape was not a violent felony.

We need not decide whether under a modified categorical approach, no version of the offense is a violent felony.  As the record stands now, there is nothing to indicate that the offense involved a violation of subsection 5121(d)(1)(ii), the only subsection that is arguably a violent felony within the meaning of the elements clause. Defendant has therefore met his burden in these 2255 proceedings to show that the conviction does not qualify as a violent felony.[9]

_____

[9] The government relies on the PSR's description of Defendant's conduct.  (PSR ¶ 26).  The PSR is not a *Shepard* document, *see United States v. Johnson*, 587 F.3d 203, 212 n.10 (3d Cir. 2009), unless the defendant does not object to the PSR's factual account of the crime.  *United States v. Doe*, 810 F.3d 132, 147 (3d Cir. 2015).  Here Defendant objects to the use of the PSR.  (Doc. 34, Br. in Supp. at p.15. n.7).  Additionally, Defendant's conduct in committing the offense is irrelevant to whether the crime qualifies as an ACCA offense.

We recognize that the government argues that Defendant has not met that burden because he has only shown the possibility that his escape conviction does not qualify as a violent felony, not that it in fact did not qualify.  And as noted below in connection with Defendant's burglary convictions, the government argues that Defendant's burden includes the burden of producing *Shepard* documents showing that the conviction does not qualify as an ACCA offense.

We agree with the government that, as a general rule, the defendant has the burden of proof in 2255 proceedings.  *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977); *United States v. Outen*, No. 09-CR-170, 2012 WL 2952096, at *4 (M.D. Pa. July 16, 2012)(Caldwell, J.).  However, in regard to issues involving *Shepard* documents, we believe the burden should remain with the government[10] as it would have the greater interest in showing that those documents establish that the conviction qualifies as an ACCA offense.  *See also United States v. Evans*, No. 02-CR-1, 2015 WL 9480097, at *2 (W.D. Pa. Dec. 29, 2015)(the government retains the burden in 2255 proceedings of showing the defendant qualifies as a career offender); *United States v. Jones*, No. 04-CR-362, 2016 WL 4186929, at *5 (D. Minn. Aug. 8, 2016)(the government retains the burden in 2255 proceedings of showing the defendant qualifies as an armed career criminal).

---

[10]  The government has the burden at sentencing to establish the defendant's armed career criminal status.  See *United States v. Howard*, 599 F.3d 269, 271-72 (3d Cir. 2010).

At this point, then, Defendant's escape conviction does not qualify as a violent felony.  However, we will grant the government an opportunity to submit *Shepard* documents on the conviction to show that it qualifies as one.

D. *Resisting Arrest*

In June 1995, Defendant pled guilty to resisting arrest.  In Pennsylvania, resisting arrest is defined as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty,  the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa. Cons. Stat. Ann. § 5104.

As Defendant maintains, at the time of his conviction in this case, resisting arrest would have qualified as a violent felony under the ACCA, but under the residual clause.  *See United States v. Stinson*, 592 F.3d 460, 465-67 (3d Cir. 2010)(concluding that resisting arrest was a crime of violence under the sentencing guidelines residual clause).[11]

Defendant argues that resisting arrest is not a violent felony.  Defendant believes the statute is probably not divisible, but for the purpose of his argument, he

---

[11]  *Stinson* was decided some four years after Defendant was sentenced, but it no doubt reflects why resisting arrest would have been considered a predicate offense under the ACCA at the time Defendant was sentenced, especially since *Stinson* was decided using the "clari[fying]" approach to the residual clause set forth in *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008).  *See Stinson*, 592 F.3d at 465.

assumes the statute is divisible into two different offenses for resisting arrest.  The first offense occurs when a person, with the intent of preventing a lawful arrest by a public servant, "creates a substantial risk of bodily injury to the public servant or anyone else."  The second offense occurs when the person "employs means justifying or requiring substantial force to overcome the resistance."[12]

Defendant argues the first offense is not a violent felony for the following reasons.  First, it is not an offense listed in the enumerated-offenses clause.  The government does not argue this point, and we agree with Defendant.  Second, the creation of "a substantial risk of bodily injury" is language echoing the now-defunct residual clause.  The government agrees with this argument, conceding that after *Johnson* (2015), "Pennsylvania's resisting arrest offense committed by means of creating a risk of injury will no longer qualify as a violent felony."  (Doc. 40, Opp'n Br. at p. 26).  We therefore turn to Defendant's argument that the second way of committing resisting arrest cannot be a violent felony under the elements clause.

Defendant argues that the second part of the statute does not satisfy the elements clause because the "substantial force" it refers to is the force a police officer must use to overcome the defendant's resistance, not any force used by the defendant.  And the defendant's conduct giving rise to that use of force need not be the "violent force" required to satisfy the element of "physical force" as that phrase is used in the elements

---

[12] We believe the statute is divisible.  *See Commonwealth v. Lyons*, 382 Pa. Super. Ct. 438, 449, 555 A.2d 920, 925 (1989)(analyzing the two parts of the statute and deciding that the defendant's conduct satisfied each part); *Commonwealth v. Eberhardt*, 304 Pa. Super. Ct. 222, 224, 450 A.2d 651, 652 (1982)(treating each part as separate violations of the statute).

clause.  *See Johnson v. United States*, 559 U.S. 133, 140, 130 S.Ct. 1265, 1271, 176

L.Ed.2d 1 (2010)(*Johnson* (2010))(in the elements clause, "the phrase 'physical force'

means *violent* force –- that is, force capable of causing physical pain or injury to another

person")(emphasis in original).  In part, Defendant cites in support *Commonwealth v.*

*McDonald*, 17 A.3d 1282, 1285-86 (Pa. Super. Ct. 2011), and *Commonwealth v.*

*Thompson*, 922 A.2d 926, 928 (Pa. Super. Ct. 2007).  In *McDonald*, the defendant's

conduct requiring force by the police consisted of fleeing the scene, requiring multiple

officers to hold him down after they apprehended him, trying to get up, and resisting

putting his hands behind his back so he could be handcuffed.  *McDonald*, 17 A.3d at

1286.  In *Thompson*, the defendant's conduct requiring force by the police consisted of

interlocking her arms and legs with her husband, described by the superior court as

"passive resistance."  922 A.2d at 928.  In *McDonald*, the Pennsylvania Superior Court

stated that the "statutory language 'does not require the aggressive use of force such as

a striking or kicking of the officer.'"  17 A.3d at 1285 (quoting *Commonwealth v. Miller*,

327 Pa. Super. Ct. 154, 156, 475 A.2d 145, 146 (1984)).

> In opposition, the government argues that the element of force is satisfied

by the requirement that the officer had to use substantial force to subdue the defendant.

The government points out that the elements clause does not specifically require the

defendant to have acted violently, only that the offense "has as an element the use,

attempted use, or threatened use of physical force against the person of another."  We

disagree.  The elements clause requires conduct by the defendant.

The government next suggests that *Shepard* documents may show that Defendant's conviction for resisting arrest comes within the elements clause.  In support, it refers to paragraph 26 of the PSR.  That paragraph recites that "Harrisburg police were attempting to serve a bench warrant on Mr. Harris when he resisted arrest and struck an officer several times in the face with a closed fist."

Review of *Shepard* documents is not allowed here.  As noted above, under the modified categorical approach, a court can sometimes look at *Shepard* documents, but only when the statutory crime is a divisible one, listing multiple alternative elements, *Abbott*, 748 F.3d at 157, so that the statute effectively creates several different crimes. *Descamps*, 133 S.Ct. at 2285 (quoted case and internal quotation marks omitted).  That part of the approach is satisfied here, as the parties have treated the statute as creating two different resisting arrest crimes.  However, divisibility is not enough.  A court may look at *Shepard* documents only to assist in determining, as among several offenses, whether the elements of the crime of conviction satisfies the requirements of the ACCA offense.

In this case, we already know that, even if Defendant had been convicted of resisting arrest under the second part of the statute, it does not qualify as an ACCA predicate offense as that part of the statute does not have as an element the use, attempted use, or threatened use of physical force.  We know this because, as shown above, a defendant may be convicted of resisting arrest under this part of the statute by passive conduct alone.  Defendant may very well have violated the statute by use of

physical force, but the defendant's conduct that violated the statute is irrelevant to the analysis, which looks to the elements of the offense.

The Pennsylvania crime of resisting arrest is not a violent felony under the ACCA. Thus, Defendant's conviction for resisting arrest does not qualify as a predicate offense under the ACCA.

E. *Burglary*

In June 1987, Defendant pled guilty to burglary. At that time, Pennsylvania defined burglary as follows:

> (a) Offense defined.--A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa. Cons. Stat. Ann. § 3502(a)(prior version); see Act No. 334, Dec. 6, 1972, P.L. 1482, § 1, effective June 6, 1973). "Occupied structure" has always been defined as: "Any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." 18 Pa. Cons. Stat. Ann. § 3501. At the time of Defendant's conviction, burglary was graded as a felony of the first degree. *Id.* § 3502(c)(prior version)("Grading.—-Burglary is a felony of the first degree."); see Act No. 334, Dec. 6, 1972, P.L. 1482, § 1, effective June 6, 1973).[13]

---

[13]  Section 3502 has gone through subsequent revisions that are not relevant here. Currently, breaking it down into formal subsections, Pennsylvania defines burglary as follows:

> (a) Offense defined.--A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

Defendant argues that the Pennsylvania burglary offense at the time he was sentenced is not a violent felony under the ACCA.  First, the offense does not qualify under the elements clause because it does not have as an element the use, attempted use, or threatened use of physical force.  Second, the offense  does not qualify under the enumerated-offenses clause because the elements of the Pennsylvania offense do not match the elements of generic burglary; Pennsylvania burglary covers a greater swath of conduct than the generic burglary offense, making the Pennsylvania offense broader than the ACCA offense.  Third, the modified categorical approach (which allows a look at *Shepard* documents) does not apply because that approach can only be used if the

---

(1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present;

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;

(3) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present; or

(4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

18 Pa. Cons. Stat. Ann. § 3502.  There is also now separate grading, depending upon the subsection violated and other circumstances.  *Id.* § 3502(c).

statute defining the state crime is divisible, and the burglary statute at issue here is not divisible.

In opposition, the government argues the following.  First, a challenge to this conviction is untimely as the law dealing with a generic burglary offense under the enumerated-offenses clause was set forth some seventeen years ago in *Taylor v. United States*, 495 U.S. 575, 598, 599, 110 S.Ct. 2143, 2158, 109 L.Ed.2d 607 (1990).  It is also untimely if viewed as a challenge under *Descamps*, *supra*, (which Defendant cites in support of his argument), because *Descamps* was decided three years before Defendant filed the instant motion.  The government further argues that Defendant cannot rely on the retroactive applicability of *Johnson* (2015), a residual clause case, to launch a claim that his burglary conviction does not qualify as a predicate ACCA offense under the enumerated-offenses clause.

On the merits of the claim, the government argues that the burglary statute is divisible, meaning that *Shepard* documents can be examined to determine if Defendant's conviction was for a version of a Pennsylvania burglary offense with elements matching the elements of generic burglary under the ACCA.  The government contends that the claim fails because Defendant had the burden of producing the *Shepard* documents, and having failed to do so, fails to meet his burden in these 2255

proceedings of showing that the burglary conviction does not qualify as an ACCA predicate offense.[14]

We reject the government's argument that Defendant's challenge to the burglary conviction is untimely or that Defendant's motion is really an untimely *Descamps* claim.  His 2255 motion is properly based on *Johnson* (2015), as he has shown above that two prior convictions, escape and resisting arrest, could only have been based on the now-defunct residual clause, and thus can no longer be considered predicate offenses.  Having shown that he properly invoked *Johnson* (2015), Defendant can proceed to establish that his prior convictions do not qualify him as a career offender under the ACCA under the elements clause or enumerated-offenses clause.  *See United States v. Gomez*, No. 04-CR-2126, 2016 WL 1254014, at *4 (E.D. Wash. Mar. 10, 2016)(2255 motion properly filed under *Johnson* (2015) not rendered untimely because the defendant's motion cites *Descamps* in support).  And he can rely on current law in doing so.  *See United States v. Ladwig*, ____ F. Supp. 3d ____, ____, 2016 WL 3619640, at *5 (E.D. Wash. Jun. 28, 2016)(applying current law to determine if the defendant's convictions qualify without the residual clause); *United States v. Evans*, No. 02-CR-1, 2015 WL 9480097, at *3 (W.D. Pa. Dec. 29, 2015)(relying on current law to evaluate a 2255 motion based on *Johnson* (2015)).  If Defendant could not examine the other convictions, he could not meet his burden of showing he does not qualify for an

---

[14]  The government points out that while it is not a *Shepard* document, the PSR states that "the defendant and four others kicked open the back door of a residence and stole $1,093 worth of property."  (PSR ¶ 21).

enhanced sentence under the ACCA and in turn that he is entitled to relief under section 2255.

We turn to the merits.  We look to whether Pennsylvania burglary qualifies as a generic burglary under the enumerated-offenses clause.[15]  The parties agree that under the categorical approach, the burglary conviction does not qualify.  As noted, under that approach, the court "focus[es] solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." *Mathis*, *supra*, 136 S.Ct. at 2248.  If the elements of the crime of conviction "cover a greater swath of conduct than the elements of" generic burglary, in other words, if the elements are broader than generic burglary, then the conviction does not qualify as a predicate offense under the ACCA. *Mathis, supra,* 36 S.Ct. at 2251 (2016).  Even if a defendant's "conduct fits within" the ACCA offense, "the mismatch of elements" disqualifies the conviction as a predicate offense. *Id.*

We agree that under the categorical approach, the conviction does not qualify, as the elements of Pennsylvania burglary are broader than generic burglary. Generic burglary has the following elements: an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, *supra*, 495 U.S. at 599, 110 S.Ct. at 2158.  Pennsylvania burglary covers more conduct.  As noted by the Third Circuit, based on the definition of "occupied structure" in section 3501, it

---

[15]  The government does not argue that Pennsylvania burglary qualifies under the elements clause, and we agree with Defendant that it does not, as it does not have as an element the use, attempted use, or threatened use of physical force.

includes not just entry into a building or structure but also entry into an automobile or

other vehicle and entry into any place adapted for carrying on business.  *United States v.*

*Bennett*, 100 F.3d 1105, 1109 (3d Cir. 1996)(ruling that Pennsylvania burglary was

broader than generic burglary).

        The burglary conviction could still qualify as a predicate offense if the

modified categorical approach applies.  That approach applies when the statute of

conviction is divisible, listing multiple alternative elements, *Abbott*, 748 F.3d at 157, so

that the statute effectively creates several different burglary crimes.  *Descamps*, 133

S.Ct. at 2285 (quoted case and internal quotation marks omitted).  The modified

categorical approach assists in identifying, "among several alternatives, the crime of

conviction so that the court can compare it to the" ACCA offense.  *Id.*  When a divisible

statute is involved, the court may look at *Shepard* documents "to determine which of the

alternative elements was involved in the defendant's conviction."  *Abbott*, 748 F.3d at 158

(quoting *Shepard v. United States,* 544 U.S. 13, 16, 125 S.Ct. 1254, 1257, 161 L.Ed.2d

205 (2005)).  Like the categorical approach, the modified categorical approach focuses

on identifying the crime of conviction, not on discovering facts that could satisfy the

elements of the ACCA offense.  *Descamps*, 133 S.Ct. at 2288, 2293.

        The Pennsylvania burglary statute is phrased alternatively.  Such a statute

may be listing elements in the alternative, meaning the statute sets forth several different

crimes, or it may be listing "various factual means of committing a single element" of a

single crime.  *Mathis*, *supra*, 136 S.Ct. at 2249.  In *Mathis*, the Supreme Court provided

guidance on determining whether a statute is divisible, thereby allowing a look at

*Shepard* documents if one of the versions of the crime matches the elements of generic

burglary.  136 S.Ct. at 2256-57, 2254.

   In arguing that the statute is indivisible, Defendant relies on two factors: (1)

state-court characterization of the offense;[16] and (2) standard jury instructions, which

Defendant says allows the jury to decide the nature of the location of the burglary without

unanimously agreeing on the exact nature of the location.

   Defendant argues that in *Commonwealth v. Franklin*, 306 Pa. Super. Ct.

422, 427, 452 A.2d 797, 799 (1982), the Pennsylvania Superior Court indicated that

burglary was indivisible because it listed the elements as follows: "(1) entry of a building

or occupied structure by the defendant; (2) with the contemporaneous intent on the part

of the defendant of committing a crime therein; (3) at a time when the premises are not

opened to the public and the defendant was not then licensed or privileged to enter."

Defendant contends that combining entry of a building or an occupied structure in a

single element indicates these are simply alternative means of committing the single

crime of burglary rather than alternative crimes of burglary.  We disagree.  The mere

listing of the statutory elements in this way is not enough to show that the superior court

viewed the statute as being indivisible.

   However, we agree with Defendant that the standard jury instructions

indicate that the Pennsylvania burglary statute is indivisible because it allows the jury to

---

[16] A factor the Supreme Court mentions.

decide the nature of the location of the burglary without being unanimous.  *See Mathis*,

136 S.Ct. at 2256 (Iowa burglary statute was indivisible when jury did not have to be

unanimous as to "whether the burgled location was a building, other structure, or

vehicle").[17]

      The Pennsylvania Suggested Standard Criminal Jury Instructions § 15.3502

(April 2015 revision) does not require the jury to unanimously agree on the nature of the

location; it can be a building, or occupied structure, or a separately secured or occupied

portion of a building or structure.[18]  It is true that the jury must unanimously decide that a

defendant entered a location, but it need not unanimously decide the nature of that

location.  This means that the entry into various locations in the Pennsylvania burglary

statute are simply means of committing burglary, not elements of separate burglary

offenses.  The statute is therefore indivisible.  *See also United States v. Siegel*, 477 F.3d

87, 91 (3d Cir. 2007)(observing in dictum that a "statutory phrase[ ]" like "burglary" has

"'relatively unitary categorical concepts.'")(quoted case omitted).  Since the statute is

---

[17]  The government argues *Bennett*, *supra*, said that Pennsylvania burglary convictions could still qualify as a predicate offense.  In *Bennett*, the Third Circuit looked at state-court documents to conclude that a burglary conviction qualified.  100 F.3d at 1110.  It did so after concluding that the statute was overbroad.  *Id.*  The court did not have the benefit of the Supreme Court's later opinions in *Descamps* and *Mathis*, which clarified that resort to *Shepard* documents could only be made after determining that an overbroad statute is divisible. *Bennett* therefore does not control whether we should look at *Shepard* documents.  *See Kohn v. School District of City of Harrisburg*, No. 11-CV-109, 2012 WL 3560822, at *4 (M.D. Pa. Aug. 16, 2012)(Caldwell, J.)(intervening Supreme Court case controls over earlier Third Circuit decision).

[18]  The instruction is designed for the current version of the statute, with its four subsections, but nonetheless can be employed here as the elements remain the same, building or occupied structure or a separately secured or occupied portion of a building or structure.

indivisible, the modified categorical approach does not apply, and *Shepard* documents cannot be viewed.

The Pennsylvania crime of burglary at issue here is not a violent felony under the ACCA.  Thus, Defendant's burglary conviction does not qualify as a predicate offense under the ACCA.

F.  *Aggravated Assault*

Defendant has two convictions for aggravated assault, one occurring in February 1987 and the other occurring in January 1995.  (PSR ¶¶ 21 and 26). At the time of these offenses, the offense of aggravated assault was essentially defined in Pennsylvania as follows:

(a) Offense defined. - A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a police officer . . . in the performance of duty or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;

(3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer . . . in the performance of duty;

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon; or

> (5) attempts to cause or intentionally or knowingly causes
> bodily injury to [school officials] while acting in the scope of
> his or her employment or because of his or her employment
> relationship to the school.

18 Pa. Cons. Stat. Ann. § 2702(a)(prior version); Feb. 2, 1990, P.L. 6, § 1, Act. No. 4.[19]

Defendant accepts that the statute is divisible, setting forth five different crimes of aggravated assault, so that the modified categorical approach can be used to determine which version of aggravated assault Defendant committed.  However, Defendant maintains that it must be established that at least one version by its elements meets the definition of a violent felony.  *See United States v. Brown*, 765 F.3d 185, 191 (3d Cir. 2014).  If none of the versions does so, the modified categorical approach cannot be used, and the prior conviction is not a predicate offense.  *Id.*

Defendant contends that none of the five subsections qualifies as a violent felony because none of them have as an element the use, attempted use, or threatened use of physical force against the person of another.[20]  Instead, each has as an element causing or attempting to cause either serious bodily injury or simply bodily injury. Defendant maintains that physical force is not the same as bodily injury, citing *United States v. Otero*, 502 F.3d 331 (3d Cir. 2007).

He also argues that bodily injury can be caused by a range of means that does not involve the use of force, citing *United States v. Torres-Miguel*, 701 F.3d 165,

---

[19]  This version of the statute does not materially differ from the version in effect in 1987, see Dec. 11, 1986, P.L. 1517, § 1, Act. No. 164, and the differences do not bear on whether aggravated assault is a violent felony.

[20]  Aggravated assault is not one of the enumerated offenses.

-27-

168-69 (4th Cir. 2012)(threatening to poison another does not involve the use or threatened use of force), and *United States v. Perez-Vargas*, 414 F.3d 1282, 1286 (10th Cir. 2005)(Colorado third-degree assault statute was not a crime of violence under the guidelines when it did not require the use of force, giving as examples of conduct that did not require the use of force "recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals").

He further argues that under Pennsylvania law aggravated assault need not include use of force or threat of force, citing in part *Commonwealth v. Thomas*, 867 A.2d 594, 597 (Pa. Super. Ct. 2005), and that we are bound by the state-court definition of the elements of a state offense. *Johnson* (2010), *supra*, 559 U.S. at 138, 130 S.Ct. at 1269.

Finally, Defendant argues that since there is nothing in the record to indicate which subsection was the crime of conviction, we can only look at the least of the acts that would support a conviction, *id.* at 137, 130 S.Ct. at 1269, here recklessness under subsection 2702(a)(1). And Defendant argues that a conviction for mere recklessness cannot be a violent felony, citing *United States v. Lee*, 612 F.3d 170, 196 (3d Cir. 2010).

In opposition, the government initially argues that the challenge to the aggravated assault convictions is untimely as it is really one under *Johnson* (2010).[21]  For

---

[21]  As noted above, in *Johnson* (2010), the Supreme Court held that the phrase "physical force" in the elements clause "means *violent* force –- that is, force capable of causing physical pain or injury to another person."  559 U.S. at 140, 130 S.Ct. at 1271 (emphasis in the original).

the reason set forth above when the same argument was made in connection with Defendant's challenge to his burglary conviction, we reject this argument.

On the merits, the government argues that each subsection is categorically a violent felony for the very reason Defendant asserts the contrary, that an offense that has as an element causing or attempting to cause either serious bodily injury or bodily injury *does* have as an element the use, attempted use, or threatened use of physical force against the person of another.  In other words, the government asserts Defendant has it backwards, and bodily injury does equate with physical force.

The government next argues that *United States v. Castleman*, ____ U.S. ____, 134 S.Ct. 1405, 188 L.Ed.2d 426 (2014), defeats Defendant's argument that bodily injury can be caused by conduct that does not involve the use of force.  The government argues that all five subsections would qualify under the elements clause and that Defendant failed to meet his burden in these 2255 proceedings of showing that the two aggravated assault convictions are not predicate offenses.

The government further argues that the 1987 conviction appears to be one under subsection 2702(a)(1) or one under subsection 2702(a)(4), both of which the government asserts categorically qualify as a violent felony.  In making this argument, the government relies on the factual recitation of the offense in the PSR.  According to the PSR, during the robbery of a convenience store on February 17, 1987, Defendant "slashed the clerk in the face" with a knife, "causing a wound which required four stitches to close."  (PSR ¶ 21).  As noted above, subsection 2702(a)(1) defines an aggravated

assault, in material part, as "caus[ing] serious bodily injury to another, or caus[ing] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."  Subsection 2702(a)(4) defines the offense, in material part, as "caus[ing] or intentionally or knowingly caus[ing] bodily injury to another with a deadly weapon."

The government also argues that the 1995 conviction appears to be based on subsection 2702(a)(3), which defines aggravated assault as "attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to a police officer . . . in the performance of duty."  The government does not cite the PSR for background on this offense, but the PSR states that while resisting arrest, Defendant "struck an officer several times in the face with a closed fist."  (PSR ¶ 26).

We begin by rejecting Defendant's argument that *Otero* establishes that no subsection of section 2702 qualifies as a violent felony, an argument that relies on the fact that the statutory language literally speaks of causing an injury rather than using force.  In *Otero*, the Third Circuit observed that "on its face" simple assault under Pennsylvania law, 18 Pa. Cons. Stat. Ann. 2701(a)(1), "does not require the 'use of force' when 'causing bodily injury.'"  502 F.3d at 336.[22]

---

[22] Section 2701(a)(1) provides that a person is guilty of simple assault when he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another."

The Supreme Court's later decision in *Castleman* has overtaken whatever strength this argument had.[23]  In *Castleman*, the Court decided that a Tennessee conviction for "intentionally or knowingly causing bodily injury" to the mother of the defendant's child, 134 S.Ct. at 1409, "necessarily involves the use of physical force," 134 S.Ct. at 1414, so that the conviction qualified under 18 U.S.C. § 921(a)(33)(A) as a "misdemeanor crime of domestic violence," supporting the defendant's conviction under 18 U.S.C. § 922(g)(9) for possessing a firearm after having been convicted of such a misdemeanor.  The Court stated: "Here, [the modified categorical] analysis is straightforward: Castleman pleaded guilty to having 'intentionally or knowingly cause[d] bodily injury' to the mother of his child, App. 27, and the knowing or intentional causation of bodily injury necessarily involves the use of physical force."  134 S.Ct. at 1414.

Based on *Castleman*, we can also conclude here that causing bodily injury or serious bodily injury also necessarily involves the use of physical force.  We can therefore reject Defendant's argument that merely because the statutory language does not literally use the words "use of force," the statute does not qualify under the elements clause as a violent felony.  *See also United States v. Gorny*, ____ F. App'x ____, ____, 2016 WL 3689063, at *4 (3d Cir. 2016)(nonprecedential)(aggravated assault under subsection 2702(a)(4) is a guidelines crime of violence because it "requires proof the defendant caused or attempted to cause bodily injury," and the "Supreme Court has

---

[23]  The Third Circuit's statement was made in the context of deciding whether trial counsel had been ineffective in not challenging the simple assault conviction as a crime of violence under the guidelines.

explained that 'the knowing or intentional causation of bodily injury necessarily involves the use of physical force,'" quoting *Castleman*).

Further, in light of how Pennsylvania defines "bodily injury" and "serious bodily injury," the statute also satisfies the Supreme Court's definition of "physical force" in the elements clause as the definitions necessitate the use of "physical force" as the Supreme Court defines it.  "Bodily injury" is defined as: "Impairment of physical condition or substantial pain."  18 Pa. Cons. Stat. Ann. § 2301.  "Serious bodily injury" is defined as: "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  *Id.*  As noted above, in *Johnson* (2010), the Supreme Court held that the phrase "physical force" in the elements clause "means *violent* force –- that is, force capable of causing physical pain or injury to another person."  559 U.S. at 140, 130 S.Ct. at 1271 (emphasis in the original).[24]  *See also United States v. Pitts*, ____ F. App'x ____, ____, 2016 WL 3743183, at *3 (3d Cir. 2016)(nonprecedential)(concluding, albeit under a plain error standard of review, that a conviction for aggravated assault on a police officer under 18 Pa. Cons. Stat. Ann. § 2701(c), formerly subsection 2702(a)(3), for intentionally or knowingly causing bodily injury to the police officer, was a crime of violence under the guidelines).

---

[24]  This definition of "physical force" does not apply to a prior conviction involving domestic violence.  *Castleman*, 134 S.Ct. at 1413.

We reject Defendant's argument that bodily injury can be caused by a range of means that does not involve the use of force (so that it cannot be said that the state offense at issue is a violent felony). We agree with the government *Castleman* defeats this argument, at least as to affirmative acts that lead to bodily injury. The example used in *Castleman* was the use of poison. A person could slip poison into another's drink and cause bodily injury but, as the argument goes, no one would think that the poisoner used force when he put the poison into the drink. Rejecting the argument, the Supreme Court reasoned in part:

> [Castleman] errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink," *ibid.* The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Castleman*, 134 S.Ct. at 1415. Thus, acts that themselves are not the use of force do still result in the indirect use of force that satisfies the elements clause. Several courts of appeals have relied on *Castleman* to reject Defendant's argument. *See Arellano Hernandez v. Lynch*, ____ F.3d ____, ____, 2016 WL 4073313, at *3 (9th Cir. 2016); *United States v. Hill*, ____ F.3d ____, ____, 2016 WL 4120667, at *6 (2d Cir. 2016); *United States v. Waters*, 823 F.3d 1062, 1065-66 (7th Cir. 2016); *United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016). We recognize the disagreement on this issue, *Rice*, 813 F.3d at

-33-

707 (Kelly, J.)(dissenting)(collecting cases, including *Whyte v. Lynch*, 807 F.3d 463, 469-72 (1st Cir. 2015)), but agree with the cases just cited that conduct leading to the indirect use of force satisfies the elements clause.

The *Castleman* reasoning deals with affirmative acts leading to the indirect use of force, but does not resolve whether acts of omission could also lead to the indirect use of force.  *Castleman* said that the use of force was the act of employing poison as a device to cause physical harm, and it noted that "'physical force' was "'simply force exerted by and through concrete bodies . . . .'"  134 S.Ct. at 1414 (quoting *Johnson* (2010)).  But it cannot be said that physical force has been used when no act has been performed, when the act has been one of omission, since there has been no force exerted by and through concrete bodies.

This observation is relevant here because aggravated assault under subsection 2702(a)(1) can be committed by an act of omission.  *See Commonwealth v. Thomas*, 867 A.2d 594, 597, 602 (Pa. Super. Ct. 2005)(aggravated assault under subsection 2702(a)(1) does not have as an element "the use of force or the threat of force" and can be committed in part by withholding food and medical care from a child).  It follows, contrary to the government's argument, that aggravated assault under subsection 2702(a)(1) is categorically not a violent felony as it can be committed without the use of force.  *See United States v. Resendiz-Moreno*, 705 F.3d 203, 205 (5th Cir. 2013)(the Georgia offense of first-degree cruelty to children is not a crime of violence under the guidelines as it can be committed "by depriving the child of medicine or by some other act

of omission that does not involve the use of physical force"). *See also United States v. Cruz-Rivera*, No. 15-CR-486, 2015 WL 6394416, at *4 (D.P.R. Oct. 21, 2015)(recognizing that an act of omission does not involve the use of physical force but not applying that principle to the federal carjacking statute at issue as it was not realistic that the offense would be committed by a threat of negligence or neglect). *But see Waters*, *supra*, 823 F.3d at 1066 (just as employing poison causes physical harm so also "withholding medicine causes physical harm, albeit indirectly").

We turn to Defendant's final argument, that since there is nothing in the record to indicate which subsection was the crime of conviction, we can only look at the least of the acts that would support a conviction, here recklessness under subsection 2702(a)(1), and a conviction for mere recklessness cannot be a violent felony.

We agree with Defendant that a conviction based upon recklessness cannot be a violent felony. *See United States v. Mahone*, 662 F.3d 651, 655 (3d Cir. 2011)(a crime of violence under the elements clause always requires a showing of intentional conduct as opposed to reckless or negligent conduct); *Otero*, *supra*, 502 F.3d at 335 (Pennsylvania simple assault conviction with a *mens rea* of recklessness is not a crime of violence under the elements clause); *Gorny*, *supra*, 2016 WL 3689063, at *4 (a Pennsylvania aggravated assault conviction under subsection 2702(a)(4) requires knowing or intentional conduct thereby satisfying the elements clause *mens rea* requirement)(citing *Mahone*).

We also agree with Defendant that the record does not show any conviction under section 2702 that qualifies as a violent felony under the ACCA.  However, we will grant the government an opportunity to show by way of *Shepard* documents that, as it has suggested, the 1987 conviction was under subsection 2702(a)(4) and that the 1995 conviction was under subsection 2702(a)(3).  Neither of these subsections has recklessness as an element, and even if they did, we think a knowing and intentional violation would be a separate version of the crime.  The government also argued that the 1987 conviction could qualify under subsection 2702(a)(1), but we have decided that subsection 2702(a)(1) is categorically not a violent felony, a conclusion that does not turn on the element of recklessness in that subsection.

G. *Robbery*

In June 1987 and in February 1990, Defendant pled guilty to robbery (PSR ¶ 21 and 23).  At the relevant times, Pennsylvania defined robbery, in pertinent part, as follows:

(a) Offense defined.--

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.

Pa. Cons. Stat. Ann. § 3701 (former version).

The parties agree that the robbery statute is divisible.  Defendant first argues that robbery under subsection (a)(1)(v) does not qualify as a predicate offense because robbery "by force however slight" does not have as an element the use, attempted use, or threatened use of physical force against the person of another.  He cites in support *United States v. Hollins*, 514 F. App'x 264, 267-68 (3d Cir. 2013)(nonprecedential), where the Third Circuit held that subsection (a)(1)(v), in light of *Johnson* (2010) did not qualify as a crime of violence under the elements clause of the guidelines, although it did qualify under the (now defunct) residual clause.  We agree that subsection (a)(1)(v) does not qualify as a violent felony on the reasoning of *Hollins*.[25]

Defendant next argues that none of the five subsections that define robbery has as an element the use, attempted use, or threatened use of physical force against the person of another.  In support, he contends that "three of the robbery subsections [subsections 3701(a)(1)(i), (ii) and (iv)] require only the infliction [or] the threat of either serious bodily injury or bodily injury without specifying any particular means -- forcible or

_____

[25]  The government argues that if Defendant's robbery convictions were based on subsection (a)(1)(v), "his opportunity for remedy has passed."  (Doc. 40, Br. in Opp'n at p.25). We decided above that a properly filed *Johnson* (2015) claim allows a defendant to challenge his prior convictions under current law.

otherwise –- by which that harm may be caused." (Doc. 34, Def.'s Br. in Supp. at p. 19). This argument is apparently the same one Defendant made in regard to his two aggravated assault convictions, that bodily injury can be caused by a range of means that does not involve the use of force. We rejected that argument, based on *Castleman*. We also conclude under *United States v. Dobbin*, 629 F. App'x 448, 452 (3d Cir. 2015)(nonprecedential), which found that a conviction under subsection (a)(1)(ii) qualifies as a crime of violence under the elements clause of the guidelines, that convictions under subsections (a)(1)(i), (a)(1)(ii), and (a)(1)(iv) qualify as violent felonies under the ACCA.

Defendant also argues that subsection (a)(1)(iii) does not qualify as a violent felony because it does not have as an element the use of force. As noted, under subsection (a)(1)(iii) a person commits a robbery when during the commission of a theft, he "commits or threatens immediately to commit any felony of the first or second degree." Defendant asserts that there are first- and second-degree felonies in Pennsylvania that can be committed during the course of a theft that do not involve the use of force, one of which is forgery under 18 Pa. Cons. Stat. Ann. § 4101, a felony of the second degree.[26] Defendant argues that subsection 3701(a)(1)(iii) is therefore categorically not a violent felony. We agree. *See United States v. Knight*, No. 15-CR-004, 2016 WL 223701, at *7 (D.N.J. Jan. 19, 2016)(identically worded New Jersey robbery section was not a crime of

---

[26] Actually, forgery is only sometimes a second-degree felony, *id.* § 4101(c), but that distinction is immaterial here.

violence under the elements clause of the guidelines because there were New Jersey crimes of the first or second degree that were not crimes of violence).

The government counters that we need not run through the list of first- and second-degree felonies in Pennsylvania.  The government maintains that because the specific first- or second-degree felony is an element of the offense, we need only look at the specific felony involved in the case and determine whether it is a violent felony. Apparently relying on paragraph 21 of the PSR, the government argues that since Defendant was charged with aggravated assault and robbery in the same incident, the first- or second-degree felony involved in the offense must have been aggravated assault. And since aggravated assault is a violent felony, it qualifies as a predicate offense, (at least the robbery offense of February 17, 1987).

We reject the government's position.  We find guidance in *United States v. Brown*, 765 F.3d 185, 191 (3d Cir. 2014).  In *Brown*, the Third Circuit had to decide if the Pennsylvania crime of making terroristic threats under 18 Pa. Cons. Stat. Ann. § 2706(a)(1) was a crime of violence under the guidelines.  Section 2706(a)(1) made it a crime to communicate "a threat" to "commit any crime of violence with intent to terrorize another."  Section 2706(a)(1) did not list each crime of violence.[27]  The Third Circuit first ruled that section 2706(a)(1) was categorically not a guidelines crime of violence because it could be committed by way of a state-law crime of violence that had as an element the

---

[27] Another Pennsylvania statute did, for the purpose of sentencing.  42 Pa. Cons. Stat. Ann. § 9714(g).  We note that both federal and state law use the term "crime of violence," but the term has different meanings in each law.

use of force, or it could be committed by a state-law crime of violence that did not have as

an element the use of force.  765 F.3d at 192-93.

The Third Circuit also ruled that because section 2706(a)(1) did not list

each state-law crime of violence, it was indivisible and thus was categorically not a crime

of violence.  The court stated:

> [U]nlike the hypothetical assault statute from *Descamps* that
> listed each type of weapon, § 2706(a)(1) does not list each
> crime of violence, and thus it is also indivisible. *See
> Descamps,* 133 S.Ct. at 2290.  Because the categorization of
> a § 2706 offense depends on a *fact* underlying the conviction
> (the crime the defendant threatened) that is not an element of
> the offense, *Descamps* instructs that the statute is overbroad
> and indivisible as to (a)(1) and thus fails as a predicate
> offense under the categorical approach.  *See* 133 S.Ct. at
> 2281–82 (prohibiting a court from looking to an offender's
> underlying conduct to determine that a prior conviction
> qualifies as a predicate offense when "the elements of the
> crime fail to satisfy [the] categorical test").

765 F.3d at 193.  Similarly, in the instant case, since section 3701(a)(1)(iii) has no list of

first- or second-degree felonies, the specific felony that might have been committed is

not, contrary to the government's position, an element of the offense and cannot be

considered under the categorical approach.

The modified categorical approach would not apply either.  The subsection

is divisible into two sub-versions of robbery:[28] (1) robbery during the commission of a theft

when the defendant commits any felony of the first or second degree; or (2) robbery

---

[28]  *See Brown*, 765 F.3d at 191(court should determine if any version of a statutory
offense can be further divided into sub-versions, one of which is a crime of violence based on
its elements).

during the commission of a theft when the defendant threatens immediately to commit any felony of the first or second degree.  Since neither sub-version has as an element the use of force, we cannot use the modified categorical approach.[29]

A robbery conviction under section 2710(a)(1)(i), (ii) or (iv) may qualify as a violent felony under the ACCA.  Defendant is correct that nothing in the record supports the conclusion that his two robbery convictions were under any of these three subsections.  However, we will grant the government an opportunity to show by way of *Shepard* documents that his prior convictions were under any of these subsections and thus qualify as a violent felony.

IV.   *Conclusion*

It appears that Defendant's motion should be granted as he has only one of the three convictions required to qualify him as an armed career criminal under the ACCA.  As noted, however, we will grant the government the opportunity to show by *Shepard* documents that any two or more of the following convictions qualify as a violent felony: (1) the June 1995 conviction for escape; (2) the 1987 or 1995 aggravated assault

---

[29] The government might have had support for its position under *United States v. Blair*, 734 F.3d 218, 225-26 (3d Cir. 2013).  That case is distinguishable, however.  It allows a look at *Shepard* documents only when the court has already begun a permitted use of the modified categorical approach.  *Brown*, 765 F.3d at 196.  Here, the modified categorical approach is not permitted.

conviction; and (3) the June 1987 or February 1990 conviction for robbery.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: August 31, 2016